**JACOBSON LAW FIRM**
2730 EAST BROADWAY BLVD., SUITE 160
TUCSON, ARIZONA 85716
TELEPHONE (520) 885-2518
FACSIMILE (520) 885-8073
jeff@jacobsonlawfirm.net
Jeffrey H. Jacobson, PCC #65402; SB#019502
Attorney for Petitioner

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| ROBERT BRADFORD, JR., <br><br> Petitioner, <br><br> vs. <br><br> UNION PACIFIC RAILROAD COMPANY, a Delaware corporation, <br><br> Respondent. | Case No. 10-CV-00751-RCC <br><br> **PETITIONER'S MOTION FOR SUMMARY JUDGMENT** <br><br> Hon. Raner C. Collins |

Petitioner Robert Bradford, Jr. (Bradford), pursuant to Federal Rules of Civil Procedure, Rule 56, moves this Court for summary judgment to set aside Public Law Board No. 6712's Award No. 146 issued on December 16, 2008, under the Railway Labor Act.

**Introduction and Overview**

This Petition involves a unique statutory scheme that regulates labor-management relations in the railroad industry, the Railway Labor Act (RLA). Among other provisions, the RLA works in conjunction with collectively-bargained contracts to establish elaborate labor dispute resolution procedures.

Bradford was employed by the Union Pacific Railroad Company (Union Pacific) for 28 years, beginning his employment as a brakeman on June 15, 1979. Bradford established seniority rights as a conductor in 1981 and worked in that capacity until his termination in 2007. During his employment with Union Pacific, Bradford was a member in good standing of the United Transportation Union (Union). PSSOF ¶¶ 1-3.[1]

---

[1] References to 'PSSOF' are to Petitioner's Separate Statement of Facts.

1

On September 4, 2007, Bradford was scheduled to work on a train traveling from Tucson to El Paso, Texas.  At 5:10 a.m., Bradford was subjected to a random drug test. PSSOF ¶¶ 11-12.  The test was positive for amphetamines.  PSSOF ¶ 24.  Bradford then utilized Union's negotiated discipline process to challenge the allegedly positive test result.

The employment relationship between Union Pacific and its bargaining unit employees is covered by a Collective Bargaining Agreement (CBA).  The CBA guarantees that Union Pacific will deal impartially with its employee in accordance with the commonly accepted standards of fairness.  PLB No. 5942, Award No. 43 (Appendix C-1).[2]

The procedures for disciplining employees are outlined in a Memorandum of Understanding between Union Pacific and the Union (Discipline Agreement).  Appendix B. The Discipline Agreement revises and replaces the CBA's discipline provisions. Appendices A-2 and A-3.  "Employees will not be disciplined without *just and sufficient cause* as determined by a fair and impartial investigation . . . ."  Appendix B, Article II(A), p. 84 of 376 (emphasis added).

The course of the disciplinary proceedings is under the control and direction of Union Pacific.  Throughout the discipline process, employees have both contractual and constitutional due process rights.  These rights begin with an investigation that occurs on railroad property known as the 'on-property investigation hearing' presided over by a Union Pacific hearing officer.  The purpose of the on-property investigation hearing is to develop *all* material facts related to the charges.  The on-property investigation hearing does *not* seek to prove whether the charges against the employee are correct.

All evidence in the case should be submitted at the on-property hearing to insure a complete and fair investigation to determine whether discipline is warranted.  All employees whose testimony may be necessary to develop all of the essential facts should be present for the on-property investigation hearing.  The hearing officer is also obligated to seek out all the facts surrounding the incident in question, those which favor as well as those which militate against the accused.  The hearing officer must impartially gather all of

---

[2] References to 'Appendix' and 'Appendices' are to Petitioner's Appendices and Supplemental Appendices to Petition for Review

the evidence in the case before rendering a decision.  Failure to do so deprives the employee of a fair and impartial hearing.  The hearing officer must remain neutral in developing all the facts at the trial pertaining to the offense with which an employee is charged.  Award No. 2158 (NRAB,[3] Div. 4); Public Law Board No. 3863, Award No. 1; Public Law Board No. 4093, Award No. 16 and Public Law Board No. 2774, Award No. 146 (Appendices C-2 through C-5).  As such, pursuant to the CBA, as well as well-established NRAB precedent, Bradford was entitled to due process during the on-property investigation hearing, including the opportunity to be heard and to present evidence on his behalf.

If not settled through the railroad's internal dispute resolution process, the dispute may be submitted to an arbitration board chosen by the parties known as the Public Law Board (PLB).  These "serve as private alternative forums to the National Railroad Adjustment Board and must conform to the same procedural requirements imposed on the Adjustment Board by § 153 First."  *Bhd. Of Ry., Airline, and Steamship Clerks v. St. Louis Southwestern Ry.*, 676 F.2d 132, 135 n. 2 (5th Cir.1982).

**ARGUMENT**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(a).  A court may set a PLB decision aside on any of three grounds: (1) where the PLB fails to comply with the provisions of the RLA, (2) when the PLB acts beyond the scope of its jurisdiction, or (3) there is fraud or corruption by one of the PLB's members.  45 U.S.C. § 153 First (q).[4]  *Union Pacific Railroad Co. v. Sheehan*, 439 U.S. 89, 93 (1978).

This statutory standard of review "is among the narrowest known to the law."  *Watts v. Union Pacific R.R. Co.*, 796 F.2d 1240, 1243 (10th Cir.1983).  "It is equally clear,

---

[3] National Railway Adjustment Board

[4] "Although 45 U.S.C. § 153 First (q) applies directly to awards of the National Railroad Adjustment Board, courts have applied the same standards of review to arbitration awards rendered by public law boards." *Armstrong Lodge No. 762 v. Union Pacific Railroad Company*, 783 F.2d 131, 134 n. 3 (8th Cir.1986) (internal citations omitted).

however, that the courts should review [PLB] orders to assure that the Board has not failed to comply with the positive requirements of the Act." *Meeks v. Illinois Central Gulf Railroad*, 738 F.2d 748, 750 (6th Cir.1984). As described below, two of the reasons for vacatur are present in this case: the PLB's failure to comply with the RLA, and the PLB's failure to recognize and remedy the fact that the decision maker did not confine himself to matters within the scope of his jurisdiction. Here, we take the jurisdictional argument first.

**I.  THE PLB EXCEEDED ITS JURISDICTION IN FAILING TO PROPERLY REVIEW THE ON-PROPERTY HEARING AND, IN DOING SO, VIOLATED THE CBA AND THE RLA**

The PLB's jurisdiction in disciplinary cases is limited to reviewing the record made at the on-property hearing to determine whether: (1) the employee charged was afforded due process; (2) the carrier met its burden to show that finding of guilt was supported by substantial and relevant evidence of probative value; and (3) the discipline imposed was reasonable. Award No. 4969 (NRAB, Div. 4); Award No. 2349 (NRAB, Div. 4) (Appendix D-8; Appendices C-6 and C-7). All procedural issues must be resolved before the Board can reach the merits of the award. 29 C.F.R. §1404.14; Award No. 4969 (NRAB, Div. 4) (Appendix D-11; Appendix C-6).

**A.  *The PLB's Decision Violates Bradford's Due Process Rights***

The RLA requires that the PLB must be presented with a full statement of facts and all supporting data bearing upon the disputes. Thus, the PLB is charged with deciding whether the on-property investigation hearing satisfied all mandated procedural and due process requirements.

Due Process during an investigation and disciplinary process has the same meaning and offers the same protections as it does under the United States Constitution. Award No. 14031 (NRAB, Div. 3); Award No. 20168 (NRAB, Div. 1); Award No. 3584 (NRAB, Div. 4); Public Law Board No. 6076, Award No. 11; and Public Law Board No. 6942, Case 31. (Appendices C-8 through C-12). Regarding the manner in which arbitration hearings are conducted, 29 C.F.R. §1404.14 requires that all proceedings conducted by the arbitrator are to be in conformity with the contractual obligations of the parties. Here, the CBA is the contract that governs arbitration proceedings consistent with the RLA.

4

The CBA proscribes that "[e]mployees will not be disciplined without just and sufficient cause as determined by a fair and impartial investigation . . . ." Appendix B, p. 84 of 376. "This provision is a guarantee by the Carrier that it will deal impartially with the employee in accordance with the commonly accepted standards of fairness. It means that not only will there be a complete investigation, but that there will also be a complete and fair trial. And that in the conduct of that trial it will present all the material facts -- those which favor as well as those which are adverse to the Claimant -- in order that it may determine upon the full record the imposition of sanctions is warranted." Award No. 20094 (NRAB, Div. 1), p. 2 (Appendix C-21).

Because the undisputed facts show that Bradford received neither a fair or impartial investigation, the PLB's award cannot stand and Bradford should be reinstated. In issuing its Award, the PLB failed to identify and rectify the following due process violations.

### 1.   Union Pacific Prevented Bradford's Access to Critical Evidence

"When request is made sufficiently in advance the employee and/or the UTU . . . designee will be allowed to examine material or exhibits to be presented in evidence prior to the investigation." Appendix B, p. 86 of 376. Despite repeated requests, Union Pacific never disclosed the requested documents. PSSOF ¶¶ 38-42. To this day, Union Pacific has never disclosed information critical to Bradford's defense in violation of the CBA.

The MRO is a Union Pacific employee charged with verifying the results of all Union Pacific employee drug and alcohol tests. The MRO's duties are governed by Federal regulations. Union Pacific also failed to uphold its responsibility to insure that the MRO complied with his obligations in this case.

49 C.F.R. §40.11 provides, in pertinent part:

(a) As an employer, you are responsible for meeting all applicable requirements and procedures of this part;

(b) You are responsible for all actions of your officials, representatives, and agents (including service agents) in carrying out the requirements of the DOT agency regulations;

(c) All agreements and arrangements, written or unwritten, between and among employers and service agents concerning the implementation of DOT drug and alcohol testing requirements are deemed, as a matter of law, to

5

> require compliance with all applicable provisions of this part and DOT agency drug and alcohol testing regulations. Compliance with these provisions is a material term of all such agreements and arrangements."

49 C.F.R. §40.11 (Appendix D-5).

Within 10 business days of receiving Bradford's written request, the MRO was required to provide Bradford with all records relating to the results of his drug test (i.e., laboratory report and data package), known as the 'litigation packet.' PSSOF ¶ 39. To this day, the very existence of the 'litigation packet' is in question because it has never been disclosed. As such, no triable issue of material fact exists that Bradford was denied his right to a fair hearing in violation of his right to due process.

### 2. The MRO Failed to Investigate a Possible False Positive Test Result

Federal regulations direct the MRO to evaluate information that casts doubt on a positive drug test. 49 C.F.R §40.141; 49 C.F.R. §219.707 (Appendix D-1 and D-3). Once an employee asserts that the presence of a drug or drug metabolite in his or her specimen results from taking prescription medication, the MRO must review and take all "reasonable and necessary steps" to verify the authenticity of all medical records the employee provides. 49 C.F.R. §40.141 (Appendix D-1). As such, the MRO is required to evaluate information that casts doubt on a positive drug test.

In our case, Bradford not only denied using any illegal drugs or alcohol, but he also told the MRO that because he was taking legally prescribed medication for high blood pressure (Atenolol, Diovan and Hydrochlorothiazide), the test could have been a false positive. PSSOF ¶ 29. At that point, the MRO was statutorily required to take all "reasonable and necessary steps" to evaluate Bradford's information and its effect on the alleged-positive Sample. Because the MRO failed to do so, the PLB should have discarded the test and reinstated Bradford. In this regard, *Atchison, Topeka and Santa Fe Railway Co. v. United Transportation Union (CT&Y)*, 175 F.3d 355 (5th Cir.1999) is directly on point.

The employee in *Atchison, Topeka* tested positive for cocaine. At his formal hearing, the employee denied using cocaine and produced a list of prescription and over-the-counter medications he was taking at the time of the test. The MRO did not attend the

employee's hearing. *Id.* at 356. The company terminated the employee and the Union appealed the decision to a Public Law Board. That PLB "found that the MRO had not investigated the effect that [the employee's] medications might have had on a drug test result and thus that the . . . positive test result was not a valid ground for firing . . . ." *Id.* at 357. The company sought judicial review of the PLB's decision. The District Court found that all four of the recognized grounds for review applied and granted the Union's motion for summary judgment. The Court of Appeals affirmed this decision, finding:

> The Board's finding was that Santa Fe failed to have its MRO investigate Richardson's medications. Because of that failure, the Board held, the positive test result could not be considered valid. . . . Without a valid positive test result, Santa Fe had no grounds under the collective bargaining agreement for dismissing Richardson, and the PLB was within its jurisdiction in reinstating him.

*Id.* at 357-58.

*Atchison, Topeka* is factually indistinguishable from our case. Here, because there is no record evidence that the MRO took any steps - let alone "reasonable and necessary" steps - to investigate the potential false positive from Bradford's prescription medications. Summary judgment is appropriate for Bradford because the PLB exceeded its jurisdiction by accepting Bradford's test as valid.

### 3. The MRO Failed to Insure that Bradford's Split-Sample Was Tested

After an employee makes a timely request to test the split-sample, the MRO "must ... immediately provide written notice to the laboratory that tested the primary specimen, directing the laboratory to forward the split specimen to a second HHS-certified laboratory." 49 C.F.R. §40.171(c) (Appendix D-6). Union Pacific was also responsible for making sure that the MRO complied with Bradford's timely requests to test a split-sample. 49 C.F.R. §40.173(a) (Appendix D-7). Bradford made two timely written requests to test the split-sample. PSSOF ¶ 27, 31. Both the MRO and Union Pacific failed to insure that the Sample was tested in accordance with federal regulations. The PLB failed to invalidate the test and on that basis, should be divested of its jurisdiction to enter an award based on deficient evidence of the entire Sample.

//

7

4. <u>Union Pacific Failed to Produce the MRO for Testimony and the HO Impermissibly Precluded Bradford from Calling His Own Expert</u>

"At the investigation, the employee and/or the [Union's] Local Chairperson . . . will be afforded the opportunity to examine or cross-examine all witnesses." PSSOF ¶ 58. Here, HO Crehan denied Bradford his right to present his expert witness in his defense. *See* Public Law Board No. 4354, Award No. 1 (Appendix C-13).

HO Crehan violated Bradford's due process rights when he excluded forensic toxicologist Mark Stoltman, Bradford's expert witness. HO Crehan excluded Expert Stoltman because, according to HO Crehan, "Mr. Stoltman was not involved in the collection of, he didn't supervise the chain of custody of, and he did not observe the lab - certified lab that was making an examination of the specimen." PSSOF ¶ 59. Expert Stoltman's proffered testimony was critical to Bradford's defense. PSSOF ¶ 60 n.4.

After HO Crehan barred Expert Stoltman's testimony, HO Crehan then precluded Bradford from attempting to read Expert Stoltman's Affidavit into the record. PSSOF ¶ 61. Nevertheless, and without explanation, HO Crehan allowed Union Pacific Safety Manager D.A. Cagle (Cagle), despite the fact that Cagle was not involved in the collection of Bradford's sample, did not supervise the chain of custody of Bradford's sample, and did not observe the lab that examined the sample, to testify as an expert on the chain of custody of Bradford's Sample and the veracity of the Sample's test results. PSSOF ¶ 62.

Only competent witnesses familiar with the case should have been called to present evidence and to be subject to cross-examination. See Special Board of Adjustment No. 910, Award No. 316 (Appendix C-14). Yet Union Pacific did not produce a single witness with direct knowledge of the Sample to validate the allegedly positive test results. Because Union Pacific chose not to produce the MRO at the on-property hearing, Bradford was denied the opportunity to confront and cross-examine him on testing procedures and results of his test Sample. In fact, *no one* involved in the Sample's chain of custody testified or was made available by Union Pacific for examination or cross-examination as required by the CBA. As such, HO Crehan and the PLB failed to insure that the CBA's requirement that Bradford had a fair on-property investigation was accomplished.

8

### 5. HO Crehan Unexplainably Precluded Bradford from Presenting Exculpatory Evidence in His Defense

Here, HO Crehan denied Bradford his right to present evidence in his defense, that is, two independently-obtained negative toxicology tests. See Public Law Board No. 4354, Award No. 1 (Appendix C-13). These tests, taken in September and October 2007, were negative for amphetamines for the preceding 90-120 days, well within the timeframe of the September 4, 2007, allegedly-positive test. PSSOF ¶ 20-22, 33-36.

Additionally, HO Crehan prevented Bradford from offering testimony to challenge the way his Sample was collected and handled. Bradford had specific objections pursuant to 49 C.F.R. §§ 40.31, 40.33 and 40.41, the federal regulations governing urine collection personnel. PSSOF ¶ 13, 15. The fact that Bradford was precluded from exploring this defense calls into question the validity of the test results and violated Bradford's right to due process. 49 C.F.R. § 40.43 (Appendix D-10). As a result, Bradford was never afforded the opportunity to challenge the test result and the unexplainable fact that his Sample was received in a lab in Philadelphia on the *same day* the Sample was collected in Tucson. In a similar case, the PLB expressed "serious concerns as to why the Carrier officials at the investigation hearing did not attach any significance to the fact that the second sample tested was negative." Public Law Board 4354, Award No. 1, p. 3 (Appendix C-13).

### 6. HO Crehan Denied Bradford an Impartial Hearing

The CBA clearly provides that employees will not be dismissed without first being given an impartial investigation. Impartiality demands that a hearing officer maintain a neutral role in developing all the facts at the trial pertaining to the offense with which an employee is charged. See Award No. 2158 (NRAB, Div. 4); Public Law Board No. 3863, Award No. 1; Public Law Board No. 4093, Award No. 16 and Public Law Board No. 2774, Award No. 146. (Appendices D-2 through D-5). As described below, HO Crehan denied Bradford an impartial hearing when he engaged in multiple ex-parte communications and manufactured his own evidence solely to make an impermissible credibility determination.

During the on-property hearing, after Bradford successfully raised the fact that the split-sample was never tested in violation of Union Pacific policies, HO Crehan initiated an

9

ex-parte communication with Union Pacific's drug testing officials. Suddenly, as the result of HO Crehan's ex-parte communication with Union Pacific officials, the MRO tested the split-sample. HO Crehan's ex-parte communications with key Union Pacific officials during the course of the on-property investigation hearing violated Bradford's right to due process. PSSOF ¶ 55.

During a recess in the on-property investigation hearing, because Union Pacific claimed that the MRO never received Bradford's fax request for a split-sample test, HO Crehan generated evidence by sending himself a fax transmission. HO Crehan then used the fax to cross-examine Bradford on the possibility of sending a blank piece of paper to generate a fax report showing a successful transmission. Appendix F, pp. 121-125. HO Crehan generated his own evidence for the sole purpose of attempting to impeach Bradford's credibility. In doing so, HO Crehan clearly crossed the line from impartial fact gatherer to prosecutor, judge, and jury, in violation of Bradford's due process rights. HO Crehan also demonstrated improper prejudice by commenting on the veracity of evidence presented by Bradford. HO Crehan violated federal regulations, the RLA, and the CBA-- and therefore Bradford's due process rights--when he adopted an adversarial role at the hearing. *See* PLB Decisions, Appendices C-15, C-1, C-16 and C-10.

The CBA's procedural due process rights that pertain to an on-property investigation hearing require that Union Pacific conduct a fair and impartial hearing, that the employee be entitled to be heard and present evidence, and that the hearing officer receive all evidence at the formal investigation. Unfortunately, the PLB failed to recognize and cure these deficiencies. A supposedly neutral arbitrator's actual and demonstrated bias in favor of one party necessitates vacatur of his awards. Such is the case here.

**B.   The PLB Exceeded its Jurisdiction Because HO Crehan's Decision Was Not Supported by Substantial and Relevant Evidence of Probative Value and HO Crehan Ignored Union Pacific's Burden of Proof**

HO Crehan ignored the burden of proof that requires substantial evidence to support the conclusion that a drug violation has occurred. By doing so, HO Crehan violated Bradford's due process rights. Every effort must be exerted so that employees are

dismissed from service only when there is substantial evidence to support the conclusion that a drug use violation took place. HO Crehan did not honor his obligations in this regard. See Public Law Board No. 4354, Award No. 1 (Appendix C-13).

In rendering its decision, the PLB relied on a letter from the MRO, which stated, "It is scientifically possible for a specimen to be positive on a test early in the day and negative later in the day." Exhibit[5] J. The PLB, however, erred in relying on this letter because it was not produced until *after* the on-property investigative record closed. Because the PLB did not exclude the letter as untimely, Bradford was denied due process.

In its decision, the PLB indicated that the results of Bradford's drug test were verified by the MRO as positive for amphetamines and methamphetamines at 711 nanograms per milliliter (ng/mL). PSSOF ¶ 24. The PLB erred because the drug test results do not include any methamphetamine reference. *Id*. The PLB also failed to recognize that the drug test should not have been reported as positive because the statutory cutoff concentration for amphetamines is 1000 ng/mL. PSSOF ¶ 23, 26; 49 C.F.R. §40.87. The PLB's decision virtually ignores the fact that Bradford's 'for cause' sample, approximately 10 hours later, tested *negative* for the same drug. PSSOF ¶ 17-18.

The MRO did not test the split-sample until it was done at Union Pacific employee HO Crehan's request. Exhibit A. The Interpretive Guidance to 49 C.F.R. §40.171 clearly articulates, however, that Union Pacific's request to test the split-sample violates the letter and spirit of the controlling federal regulations.

> Can someone other than the employee direct that an MRO have the employee's split specimen tested?
>
> No. Because the split sample exists to provide the employee with "due process" in the event that he or she desires to challenge the primary specimen's results, only the employee can request that the split specimen be tested.
>
> In addition, an employer or a union (or other labor representative) may not act on behalf of the employee in requesting that the split sample be tested.

---

[5] References to 'Exhibit' are to the Exhibits attached to Petitioner's Petition for Review.

11

Appendix G, p. 104 of 131 (emphasis in original); Respondent's Amended Appendix, p. 207 of 272.

Record evidence and federal regulations clearly establish that Union Pacific was prohibited from requesting the split-sample test. By failing to recognize and remedy this violation, the PLB violated Bradford's due process rights.

### C. The PLB Lacks Jurisdiction Because its Discipline Was Not Reasonable

Bradford's termination is not rationally explainable as a logical means of furthering the aims of the contract because Union Pacific chose to pursue this case as ordinary discipline rather than through its contractual agreement with Bradford. In 2006, Bradford voluntarily participated in the Union Pacific's Drug and Alcohol Rehabilitation / Education Program. PSSOF ¶ 4. The Prevention Program Discipline Panel (PPDP) was established for the purpose of resolving cases arising from charges in accordance with the Prevention Program Agreement. PSSOF ¶ 7. Under the Prevention Program Agreement, if an employee is charged during the one-year probationary period, the employee shall promptly be advised of the allegations in writing. PSSOF ¶ 5. Within ten days of receipt of written notification of removal from the Program the employee must contact the Union and request that the PPDP be convened to review if the charges are substantiated. PSSOF ¶ 6. In this case, Union Pacific unexplainably bypassed the PPDP and the CBA. PSSOF ¶ 8-9.

All proceedings conducted by the arbitrator are to be in conformity with the contractual obligations of the parties. The CBA requires that an employee will not be disciplined without just and sufficient cause as determined by a thorough, fair and impartial investigation in which he is afforded the opportunity to present witnesses. Even though it had an affirmative obligation to develop all the material facts necessary to insure a fair and impartial investigation, Union Pacific never attempted to afford Bradford proper due process. *See* PLB Awards, Appendices C-14, C-17, C-18, C-19.

### D. The PLB's Decision is Without Foundation in Reason or Fact

A PLB exceeds its jurisdiction if it issues a decision without foundation in reason or fact. *International Ass'n of Machinists v. Southern Pac. Trans. Co.*, 626 F.2d 715, 717 (9th Cir.1980). The basis of the Board's award must be "rationally inferable . . . from the letter

or purpose of the collective bargaining agreement." *Id*. Further, courts may reject a PLB award as exceeding its jurisdiction if it is "so unfounded in reason and fact, so unconnected with the wording and purpose of the [CBA] as to 'manifest an infidelity to the obligation of the arbitrator.'" *Bhd. Of R.R. Trainmen v. Cent. Of Ga. Ry. Co.*, 415 F.2d 403, 415 (5th Cir.1969), quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). Here, the PLB did not engage in a good-faith, reasonable effort to apply the CBA to the facts of this case. For the reasons discussed above, the PLB's decision is so categorically wrong that it bears no relationship to the CBA. The PLB failed to recognize that Bradford had constitutional and contractual rights to present his witnesses and evidence to insure his case was decided on the merits. Because the Award was not supported by substantial evidence, the PLB exceeded its jurisdiction.

> **E.    The PLB Exceeded Its Jurisdiction Because Its Award Does not Draw Its Essence From the CBA or the RLA**

An arbitrator does not exceed the scope of his jurisdiction as long as he stays "within the areas marked out for his consideration." *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 598 (1960). The PLB exceeds its jurisdiction if its decision does not draw its essence from the CBA and lacks a rational foundation. *Union Pacific v. United Transportation Union*, 820 F.Supp. 1198 (D.Neb.1993). All proceedings conducted by an arbitrator are to conform to the contractual obligations of the parties. 29 C.F.R. §1404.13 (Appendix D-8).

An arbitration award fails to derive its essence from the agreement when it (1) conflicts with express terms of the agreement; (2) imposes additional requirements not expressly provided for in the agreement; (3) is not rationally supported by or derived from the agreement; or (4) is based on 'general considerations of fairness and equity' instead of the exact terms of the agreement. *National Gypsum Co. v. United Steelworkers of America,* 793 F.2d 759, 766 (6th Cir.1986) (citations omitted). For the following reasons, the PLB fails in this regard.

In its decision, the PLB concluded that Union Pacific was not obligated to follow federal regulations requiring it to provide Bradford with copies of any records pertaining to

13

his use of alcohol and/or drugs, and tests results within ten days of receiving Bradford's written request. Exhibit A, p. 2. In doing so, the PLB exceeded its jurisdiction. 49 C.F.R. §40.329; 49 C.F.R. §40.11 (Appendices D-4 and D-5). The PLB's decision also indicates that, "The Claimant allegedly requested the litigation package of the two labs that tested his samples. As far as this PLB knows, Claimant has not been furnished this information. However, it is not the responsibility of the Carrier." PSSOF ¶ 73. Federal regulations, however, require Union Pacific to disclose copies of the records he requested along with the litigation packet. The PLB acted outside of its jurisdiction by blatantly misapplying federal regulations. 49 C.F.R. §§40.11, 40.329 (Appendices D-5 and D-4).

The PLB's decision was also factually deficient in a number of significant ways. The decision asserts that, "[u]pon arrival in El Paso, Claimant asserted he fell and hurt his tail bone (there were no witnesses to the alleged fall and injury) and was subjected to a "for cause" drug and alcohol test at 3:51 p.m. That test, which was on the very same day, was verified as a negative test." PSSOF ¶¶ 17-18. The comment that there were no witnesses to Bradford's fall was not based on any evidence in the record. PSSOF ¶ 16. In fact, Bradford's El Paso injury was *never* discussed at the on-property hearing. By injecting facts not in evidence from the on-property hearing, the PLB exceeded its jurisdiction.

The PLB also stated that, "There is no question the Carrier proved the Claimant violated its Drug and Alcohol Policy for the second time. In fact, if one were cynical, it would appear the Claimant began his defense by alleging an injury at El Paso knowing full well he would get a second test. The Claimant was not a new employee who was unfamiliar with how the Carrier enforces its Drug and Alcohol Policy. The Claim will be denied." PSSOF ¶ 72. The PLB's responsibility is to interpret the CBA and base its decision on the facts of the case. The PLB's comment that Bradford fell in order to get a second test has absolutely no support in the record. As a result of the PLB's failure to carry out the aims of the RLA, the CBA, and federal regulations, and by inserting facts and hyperbole into the record, it has exceeded its jurisdiction. Because the PLB's decision fails to draw its essence from the CBA and lacks a rational foundation, the PLB's award should be vacated.

//

### F. The PLB Exceeded Its Jurisdiction by Rendering Its Award 67 Days Late

"Arbitrators are encouraged to render awards not later than 60 days from the date of the closing of the record as determined by the arbitrator, unless otherwise agreed upon by the parties or specified by law." 29 C.F.R. §1404.14(a) (Appendix D-11). Federal law requires that the agreement to arbitrate "shall fix a period from the beginning of the hearings within which the said PLB shall make and file its award: Provided, that the parties may agree at any time upon an extension of this period." 45 U.S.C. §158(i).

Here, the Agreement to Arbitrate between Union Pacific and the Union sets a 30-day deadline for the arbitration decision absent an agreement to extend that time. In this case, there was no agreement to extend the 30-day period. The PLB's hearing concluded on September 11, 2008. The PLB did not render its decision, however, until December 16, 2008, 97 days after the hearing. The PLB's jurisdiction is limited to the scope of the agreement between Union Pacific and the Union. The PLB did not comply with the requirements of the RLA when it failed to decide the case within the time provided in the agreement between the parties to render an award within 30 days. Therefore, because the PLB rendered its decision 67 days late, the PLB exceeded its jurisdiction. *See Jones v. St. Louis-San Francisco Ry. Co.*, 728 F.2d 257, 265 (6 Cir.1984) (an untimely award is void even without contractual language that expressly renders an untimely award void).

In summary, the PLB's award ignored the fundamental protections afforded Bradford under the CBA, including the right to a fair opportunity to present his defenses and claims in the proceedings. Even though it had an affirmative obligation to develop *all* material facts necessary to insure a fair and impartial investigation, Union Pacific never attempted to afford Bradford proper due process. *See* Award No. 19873 (NRAB, Div. 1); Special Board of Adjustment No. 910, Award No. 372; Special Board of Adjustment No. 910, Award No. 316; Public Law Board No. 2439, Award No. 165 (Appendices C-17, C-18, C-14 and C-19). Accordingly, the PLB exceeded its jurisdiction.

## II. FAILURE TO COMPLY WITH THE PROVISIONS OF THE RLA

The second prong of statutory review under the RLA is whether the PLB failed to comply with the provisions of the statute itself. 45 U.S.C. §153 First (q). Typically, federal

court reviews of PLB decisions under the 'failure to comply' prong are limited to determining whether boards have complied with the RLA's procedural obligations. *See United Transportation Union v. National Railroad Passenger Corporation (Amtrak)*, 588 F.3d 805, 811 (2nd Cir.2009). The RLA's provision governing PLB hearings requires that the PLB be presented with a "full statement of the facts and all supporting data bearing upon the disputes" 45 U.S.C. §153 First (i). As discussed above, Union Pacific failed to insure that the on-property investigation developed all of the facts and evidence in the case. Summary judgment is appropriate because no triable issue of material fact exists that both Union Pacific and the PLB violated Bradford's right to have the PLB thoroughly and completely analyze his case.

### III. THE PLB'S AWARD SHOULD BE VACATED IN VIOLATION OF BRADFORD'S RIGHT TO DUE PROCESS

In addition to the three grounds for review described above, courts have recognized a fourth standalone standard - that railroad arbitration decisions are reviewable for possible due process violations. *Union Pac. R.R. v. Price*, 360 U.S. 601, 616 (1959) (NRAB awards are reviewable for due process violations); see also *Brotherhood of Locomotive Engineers v. St. Louis Southwestern Railway Co.*, 757 F.2d 656, 660-61 (5th Cir.1985). The Ninth Circuit follows the majority of federal circuits that approve judicial review of constitutional claims under the RLA. *See Edelman v. Western Airlines*, 892 F.2d 839, 847 (9th Cir.1989); *see also O'Neill v. Public Law Board No. 550*, 581 F.2d 692, 694 (7th Cir.1978)

Under the RLA provision governing PLB hearings, due process requires that the PLB be presented with a "full statement of the facts and all supporting data bearing upon the disputes." 45 U.S.C. §153 First (i). PLB decisions, "are acts of government, and must not deprive anyone of life, liberty, or property without due process of law." *Elmore v. Chicago & Ill. Midland Ry.*, 782 F.2d 94, 96 (7th Cir.1986). Due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976). As discussed in detail above, there is no dispute of material fact that HO Crehan did not obtain *all* of the facts and supporting data related to Bradford's drug tests. Because the PLB failed to insure that it was presented with a

complete statement of the facts and data bearing upon the disputes in this case, it violated Bradford's statutory right to due process and summary judgment is appropriate.

## IV. THE COURT SHOULD REFUSE TO ENFORCE THE PLB AWARD BECAUSE IT OFFENDS PUBLIC POLICY

Federal courts possess authority to vacate arbitration awards under the RLA on public policy grounds when those awards violate well-defined and dominant public policy. *Union Pacific R.R. v. United Trans. Union (Madison)*, 3 F.3d 255, 260 (8th Cir.1993), *cert. denied*, 114 S.Ct. 881 (1994); *Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l*, 861 F.2d 665, 669-71 (11th Cir.1988). The Supreme Court has applied the public policy doctrine in cases involving arbitration awards. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 42 (1987). ("A court's refusal to enforce an arbitrator's award under a collective-bargaining agreement because it is contrary to public policy is a specific application of the more general doctrine, rooted in common law, that a court may refuse to enforce contracts that violate law or public policy.") Given the gross violations of the CBA and the right to have *all* of the evidence in his case developed fairly and impartially, public policy clearly weighs in favor of Bradford's right to due process.

## V. CONCLUSION

The Public Law Board's ruling violates Bradford's constitutional due process rights and those contractually guaranteed to him under the CBA and RLA. As such, Award No. 146 of Public Law Board No. 6712 should be vacated and Bradford reinstated to service with seniority, back pay, and with all other rights unimpaired.

DATED this 22nd day of July, 2011.

JACOBSON LAW FIRM

 /s/  Jeffrey H. Jacobson
Jeffrey H. Jacobson
Attorney for Petitioner

Filed via the CM/ECF system and copy electronically provided
this 22nd day of July, 2011, to:

Clifford A. Godiner
Thompson  Coburn LLP
One US Bank Plaza, St. Louis, MO
*Attorneys for Respondent Union Pacific Railroad Company*

17