**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| Robert Bradford, Jr., | ) | CV-10-00751-TUC-JGZ |
| Petitioner, | ) | **ORDER** |
| vs. | ) | |
| Union Pacific Railroad Co., a Delaware Corporation, | ) | |
| Respondent. | ) | |

Pending before the Court is Petitioner Robert Bradford, Jr.'s ("Bradford") Motion for Summary Judgment filed on July 22, 2011, seeking judicial review of an arbitration decision by Public Law Board No. 6712 ("PLB"). (Doc. 24.)  Respondent Union Pacific Railroad ("Union Pacific") filed an Opposition to Bradford's Motion on September 12, 2011. (Doc. 28.)  Bradford filed a reply on October 17, 2011. (Doc. 35.)

Also pending before the Court is Respondent's Cross-Motion for Summary Judgment filed on July 22, 2011. (Doc. 26.)  Bradford filed an Opposition to the Motion on September 13, 2011. (Doc. 30.)  Respondent filed a Reply on October 17, 2011. (Doc. 34.)

Although captioned as cross-motions for summary judgment, this matter is essentially an appeal of an administrative decision made by the Board on December 16, 2008.  After fully considering the arguments, the Court denies Bradford's appeal of the Board's order and dismisses the action with prejudice.

//

**Factual and Procedural Background**

The undisputed facts of this case are as follows:

Union Pacific is a railroad and a carrier subject to the Railroad Labor Act ("RLA"). Bradford began his employment as a brakeman for Union Pacific's predecessor, Southern Pacific Railroad, in 1979. Bradford established seniority rights as a conductor in 1981 and worked in that capacity until his termination in 2007.

Because they are responsible for the movement of large freight trains weighing many tons and often traveling through populated areas, Union Pacific employees holding safety-sensitive positions, including conductors such as Bradford, are subject to mandatory drug and alcohol testing. Union Pacific contracts with an independent, federally-licensed third party testing laboratory to conduct drug and alcohol testing of urine samples provided by employees. After collection, the sample is split into two parts in the employee's presence. Both samples are sent to the laboratory; one part is tested immediately and the other is saved for subsequent re-testing. The laboratory first performs a screening test. If the screening test is positive, a confirmatory test is run. If the confirmatory test is also positive, the result is reported to a Medical Review Officer ("MRO"), a doctor not employed by Union Pacific, for review. If the MRO verifies that positive result, he/she reports only the results of the confirmatory test to Union Pacific.

In July, 2006, Bradford was subjected to a drug test, tested positive, and was terminated. Bradford admitted that he was guilty of drug use in violation of Union Pacific policy; in exchange for his admission and his agreement to seek treatment, he was returned to service on a lenience basis in October, 2006. Pursuant to Union Pacific policy, an employee who is granted a one-time return to service and violates the prohibition on drug use again within ten years will be dismissed.

At approximately 5:10 a.m. on September 4, 2007, Bradford was subjected to a follow-up drug and alcohol test at the start of his work assignment. On September 12, 2007,

1   Dr. Randy Burnett, the MRO who reviewed Bradford's test results, notified Bradford and
2   Union Pacific that Bradford's September 4, 2007 test was positive for amphetamines.

3   United Transportation Union ("UTU") is a labor organization duly authorized to
4   represent Union Pacific's conductors, including Bradford, under the RLA. Union Pacific and
5   UTU are parties to a collective bargaining agreement ("CBA") relating to the discipline of
6   conductors, including Bradford. The CBA sets forth the procedures to be followed when a
7   potential disciplinary event occurs. First, a Union Pacific hearing officer conducts a recorded
8   investigation hearing. Within ten days of the hearing, a Union Pacific superintendent issues
9   a disciplinary decision. UTU can appeal the Union Pacific disciplinary decision to a
10  designated Union Pacific labor relations officer. Under the terms of the CBA, if UTU or the
11  employee is unhappy with the results of this appeal, the matter may be submitted to binding
12  arbitration before the PLB.

13  On September 13, 2007, Union Pacific initiated disciplinary proceedings pursuant to
14  the CBA by mailing Bradford a "Notice of Formal Investigation" setting an investigation
15  hearing date for September 20, 2007. At UTU's request, the investigation hearing was
16  postponed to October 24, 2007.

17  Shortly after the start of the October 24, 2007 investigation hearing, UTU claimed that
18  it had not been provided with copies of the evidence upon which Union Pacific would rely.
19  Union Pacific Hearing Officer Brian Crehan adjourned the hearing to November 13, 2007
20  to allow UTU and Bradford time to review Union Pacific's evidence.

21  The investigation hearing did not reconvene until November 19, 2007. Union Pacific
22  submitted reports received from the MRO stating that Bradford had tested positive for
23  amphetamines. Bradford argued that he had timely requested testing of the split sample but
24  that the split sample had never been tested. The hearing officer contacted the MRO's office,
25  which stated that they had not received any requests but that they would proceed to test the
26  split sample. The hearing was recessed. The testing was conducted by a different laboratory
27  than the one that had performed the original test; it confirmed the positive result on
28  November 26, 2007. The hearing was reconvened on November 30, 2007.

1    Also during the investigation hearing, Bradford argued that the positive test result was

2    incorrect.  Bradford stated that on September 4, 2007, while on duty, he slipped and injured

3    his tailbone.   As a result of this accident, he was subjected to another drug test at

4    approximately 3:51 p.m., the result of which was negative.  The hearing officer admitted the

5    results of the second test into evidence. (Doc. 22-1, pg. 94.)

6    After the investigation hearing was completed, UTU submitted additional evidence

7    to the Union Pacific Superintendent charged with making the disciplinary decision in

8    Bradford's case.   This additional evidence included negative drug tests of Bradford's hair

9    conducted after his removal from service and the testimony of a purported witness, David

10   Stoltman.

11   On December 7, 2007, the Union Pacific Superintendent notified Bradford that the

12   charge against him of violating Union Pacific's drug and alcohol policy had been sustained

13   and he was therefore being permanently dismissed from employment.  Pursuant to the CBA,

14   UTU appealed the Superintendent's decision; Union Pacific rejected the appeal.  The matter

15   was then submitted to binding arbitration before the PLB.

16   In his Submission to the PLB, Bradford raised the following claims: (1) the issue of

17   Bradford's alleged substance abuse should have been resolved pursuant to Union Pacific's

18   Prevention Program Agreement rather than the CBA procedure; (2) Bradford was not

19   provided with a "litigation packet," *i.e.* the documentary record of the drug testing procedure,

20   prior to the investigation hearing; (3) the hearing officer erred in precluding the testimony

21   of Bradford's expert witness and independent drug test results obtained by Bradford; (4) the

22   hearing officer was argumentative and prosecutorial; (5) the hearing officer engaged in an

23   improper *ex parte* conference with Union Pacific employees involved in the investigation;

24   (6) the threshold levels of Bradford's drug test were below the cutoff for confirmatory

25   testing;[1] (7) Bradford's urine specimen was improperly collected; (8) the split sample was

26   not tested in a timely manner; and (9) exonerating evidence demonstrates that Bradford's

27   

28   [1] At the PLB arbitration hearing, UTU conceded that this argument was factually incorrect.

positive test result was incorrect.  Bradford's submission included the materials provided by the UTU to the Union Pacific Superintendent following the investigation hearing.

Union Pacific also provided a Submission to the PLB.  It responded to the arguments made in Bradford's Submission and provided the PLB with the transcript and exhibits from the investigation hearing (as well as other exhibits).  Union Pacific also provided the PLB with a letter from the MRO dated September 17, 2007, which stated "it is scientifically possible for a specimen to be positive on a test early in the day and negative later in the day." This letter had been previously disclosed to Bradford on March 27, 2008.

The PLB held an arbitration hearing on September 10, 2008.  On December 16, 2008, the PLB issued its decision affirming Union Pacific's decision to terminate Bradford.  The PLB discussed the two drugs tests to which Bradford had submitted on September 4, 2007 and the September 17, 2007 letter from the MRO reconciling the contradicting test results. Based on the drug tests and the September 17, 2007 letter, the PLB concluded that Union Pacific had proven that Bradford violated the drug and alcohol policy for a second time.  The PLB rejected Bradford's concerns regarding procedural errors during the investigation hearing.  The PLB found that regardless of whether Bradford had timely requested testing of the split sample, the results of the split sample testing were positive.  The PLB also concluded that the testing laboratory, not Union Pacific, was responsible for furnishing Bradford with a copy of the litigation packet.

On December 14, 2010, Bradford filed the instant action, challenging the PLB's arbitration decision.

## Standard of Review

Congress enacted the RLA in 1926 in order to promote stability in the railroad industry and to provide for prompt and efficient resolution of labor-management disputes arising out of railroad collective bargaining agreements.  *Lewy v. Southern Pacific Transp. Co.*, 799 F.2d 1281 1289 (9th Cir. 1986).  Congress specifically intended in the RLA to keep railroad labor disputes out of the courts and instead requires the use of grievance procedures and arbitration.  *See id.*  National policy favors the final settlement of labor disputes by

arbitration.  *See, e.g., Air Line Pilots Association, International v. Eastern Air Lines, Inc*., 632 F.2d 1321, 1323 (5th Cir. 1980).  To that end, the scope of judicial review of PLB awards under the RLA is "among the narrowest known to the law."  *International Ass'n of Machinists v. Southern Pac. Transp. Co.*, 626 F.2d 715, 717 (9th Cir. 1980). "The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *United Steelworkers of America v. Enterprise Wheel and Car Corp*., 363 U.S. 593, 596 (1960).  Accordingly, the RLA allows courts to review PLB decisions on three specific grounds: (1) failure of the board to comply with the RLA; (2) failure of the board to conform, or confine itself to matters within its jurisdiction; and (3) fraud or corruption.[2] *English v. Burlington Northern R. Co.*, 18 F.3d 741, 743 (9th Cir. 1994); 45 U.S.C. §153(q).

The Ninth Circuit also recognizes that awards can be set aside if the PLB denies a party due process.  *See English,* 18 F.3d at 744.  In order to prevail on a Fifth Amendment due process claim a petitioner must show that the PLB itself denied the petitioner due process during its proceeding. Cases allowing judicial review of board awards on due process grounds restrict the review to the actions of the PLB.  *See id.*

**Discussion**

Bradford alleges that this Court should overturn the decision of the PLB because the PLB failed to comply with the RLA, the PLB exceeded its jurisdiction, and the PLB violated his due process rights.

**I.    The PLB complied with the Railway Labor Act**

Section 153 of the RLA establishes a National Railroad Adjustment Board.[3]  It states, in relevant part:

---

[2] No fraud or corruption has been alleged in this case.

[3] The RLA as defined applies only to the National Railroad Adjustment Board ("NRAB"), but courts have held that the same standard of review applies equally to Public Law Boards created pursuant to 45 U.S.C. § 153.  *See English*, 18 F.3d at 744 n.1.

(i)   The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes.

(j)   Parties may be heard either in person, by counsel, or by other representatives, as they may respectively elect, and the several divisions of the Adjustment Board shall give due notice of all hearings to the employee or employees and the carrier or carriers involved in any disputes submitted to them.

45 U.S.C. §153(i) and (j).  Typically, a federal court's review of board decisions under the "failure to comply" prong set forth in *English* has been limited to determining whether boards have complied with the RLA's procedural obligations, specifically the "due notice" requirement of 45 U.S.C. § 153(j).  *See United Transp. Union v. National R.R. Passenger Corp.*, 588 F.3d 805, 811 (2d. Cir. 2009) (collecting cases).  According to Bradford, 45 U.S.C. §153(i) also imposes upon the PLB an obligation to review "a full statement of the facts and all supporting data bearing upon the disputes."  Bradford argues that the PLB failed to make its decision based on a full statement of the facts and all supporting data because the facts before the PLB were the product of an error-riddled investigation.

The Court disagrees with Bradford's position that the RLA imposes upon the PLB an obligation to gather and consider all facts and supporting data bearing upon a dispute.  Section 153(i) sets forth the requirements for submissions filed by aggrieved parties seeking arbitration.  *See   Union Pacific R. Co. v. Brotherhood of Locomotive Engineers and Trainmen General*, 130 S.Ct. 584, 591 (2009) (citing 29 C.F.R. § 301.5, "Form of Submission.").  Pursuant to applicable regulation, the PLB is only permitted to consider evidence which has been submitted by the parties after disclosure to the opposing party. *See* 29 C.F.R. § 301.5(d)(e); § 301.6.  It is undisputed that the PLB did not refuse to hear any evidence or argument offered by the parties.  (Doc. 27, ¶ 48.)  Because the PLB had no obligation under the RLA to gather evidence, the Court rejects Bradford's argument that the

1  PLB violated the RLA by arbitrating a dispute arising from an allegedly biased on-property

2  investigation hearing.

3  **II.     The PLB did not exceed its jurisdiction**

4         An award exceeds the board's jurisdiction if it is "without foundation in reason or

5  fact." *See International Ass'n of Machinists and Aerospace Workers, Dist. Lodge No. 19 v.*

6  *Southern Pacific Transportation Co.*, 626 F.2d 715, 717 (9th Cir. 1980) (citing *Brotherhood*

7  *of Railroad Trainmen v. Central of Georgia Railway Co.*, 415 F.2d 403 (5th Cir. 1969)).

8  "(A)n award must have a basis that is at least rationally inferable, if not obviously drawn,

9  from the letter or purpose of the collective bargaining agreement."[4]  *Id*.  As the Supreme

10 Court stated in *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001):

11         We recently reiterated that if an " 'arbitrator is even arguably construing or
           applying the contract and acting within the scope of his authority,' the fact that
12         'a court is convinced he committed serious error does not suffice to overturn
           his decision.' " *Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. 57,
13         62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000) (quoting *Misco, supra*, at 38, 108
           S.Ct. 364).  It is only when the arbitrator strays from interpretation and
14         application of the agreement and effectively "dispense[s] his own brand of
           industrial justice" that his decision may be unenforceable. *Steelworkers v.*
15         *Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d

16  _____

17         [4] Bradford devotes a significant portion of his Motion for Summary Judgment to the argument
    that the PLB did not comply with the jurisdictional requirements set forth in other RLA arbitration
18  awards, specifically Award No. 4969 and Award No. 2349.  (Doc. 24, pgs. 4-10.)  Award No. 4969
    does not actually contain a jurisdictional standard and appears to have been included in error.
19  Award No. 2349 states that the PLB's jurisdiction is limited to reviewing the record made at the on-
    property hearing to determine whether: (1) the employee charged was afforded due process; (2) the
20  carrier met its burden to show that finding of guilt was supported by substantial and relevant
    evidence of probative value; and (3) the discipline imposed was reasonable.  (Doc. 1-2 pg. 123.)
21  Bradford does not cite, and this Court is unaware of, any federal case law adopting this jurisdictional
    standard.  Nor does Award No. 2349 provide any citation in support of this standard.  Moreover,
22  Bradford's arguments under this standard do not allege that the PLB *exceeded* its jurisdiction.
    Instead, Bradford uses this jurisdictional framework as the basis for challenging the merits of the
23  PLB's findings: he contends that the PLB erroneously failed to find a due process violation in the
    on-property investigation hearing, erroneously concluded that the Hearing Officer's decision was
24  supported by substantial evidence and erroneously concluded that the discipline was reasonable.
    Consequently, the Court rejects these arguments and analyzes whether the PLB acted outside the
25  scope of its jurisdiction as defined by relevant federal case law.  In addition, the Court rejects
    Bradford's reliance on *National Gypsum Co. v. United Steelworkers of America*, 793 F.2d 759, 766
26  (6th Cir. 1986), as that case has been overruled.  *See Michigan Family Resources, Inc. v. Service*
27  *Employees Intern. Union Local 517M*, 475 F.3d 746 (6th Cir. 2007).

28

1424 (1960). When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's "improvident, even silly, factfinding" does not provide a basis for a reviewing court to refuse to enforce the award. *Misco*, 484 U.S. at 39, 108 S.Ct. 364.

The Collective Bargaining Agreement between the parties provides as follows: "employees will not be disciplined without just and sufficient cause as determined by a fair and impartial investigation except as provided below." (Doc. 1-2, pg. 84.) Bradford contends that the PLB's decision did not uphold the purpose of the collective bargaining agreement because it lacked just and sufficient cause and because the investigation underlying it was not fair and impartial. Accordingly, Bradford claims, the PLB exceeded its jurisdiction. The Court disagrees.

**A.  Just and sufficient cause**

The PLB concluded that Bradford's termination was supported by just and sufficient cause because the first drug test taken on September 4, 2007 was positive for amphetamines, the split sample tested positive for amphetamines, and the MRO stated that the scientific accuracy of the September 4, 2007 test was not undermined by a negative test result obtained later in the day. Bradford does not identify any plain language in the CBA that the PLB's factual finding ignores. Rather, Bradford contends that the PLB's finding was not supported by just and sufficient cause because the PLB's decision contained factual errors.[5]

---

[5] In his Motion for Summary Judgment, Bradford argues that the PLB decision contained a factual error because it misstated the threshold for reporting a positive result at 500 ng/mL. Bradford raised and withdrew that same argument at the PLB arbitration hearing, and appears to have abandoned it in subsequent pleadings in this Court. In any event, it is factually incorrect. (Doc. 27, ¶20.) Bradford also argues in his Motion for Summary Judgment that the the PLB's decision lacked sufficient cause because the PLB improperly relied on the September 17, 2007 letter from the MRO. According to Bradford, that letter was not submitted during the investigation hearing and therefore could not be considered by the PLB. However, nothing in the CBA states that the PLB can only consider evidence submitted to the investigation hearing officer. To the contrary, the CBA is silent as to what evidence may be considered by the PLB. A Memorandum of Agreement between Union Pacific and UTU provides that the PLB may consider "evidence and arguments written in the submissions ... based on what has been handled and submitted by the parties during on-property handling prior to listing the dispute on Attachment A." (Doc. 27-1, pg. 11.) The September 17, 2007 letter was provided to Bradford on March 27, 2008 and was included in Union Pacific's Submission to the PLB. Bradford abandoned this argument in his Reply to Union

1    Specifically, Bradford takes issue with the PLB's parenthetical observations that there were

2    no witnesses to his September 4, 2007 fall in El Paso and that a cynic might conclude that

3    Bradford began his defense by alleging an injury in El Paso knowing he would get a second

4    test.  Aside from the fact that these observations by the PLB were irrelevant to its finding that

5    sufficient evidence supported Union Pacific's conclusion that Bradford violated their drug

6    and alcohol policy, the PLB's findings are outside this Court's review.  The Court is not

7    authorized to reconsider the merits of an award even if the parties allege that the award rests

8    on errors of fact.  *See United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S.

9    29 (1987).  Accordingly, this argument is without merit.

10        **B.    Fair and impartial**

11       Bradford contends the PLB violated the CBA's agreement to a fair and impartial

12    investigation because: (1) Union Pacific prevented Bradford's access to his litigation packet;

13    (2) the MRO failed to evaluate Bradford's prescription medication information; (3) the MRO

14    failed to insure that Bradford's split-sample was tested; (4) the hearing officer who presided

15    over the on-property investigation hearing violated Bradford's due process rights when he

16    excluded Bradford's expert witness and permitted the testimony of UP Safety Manager

17    Cagle; (5) the hearing officer violated Bradford's right to present evidence in his defense

18    when he denied Bradford's request to present independently-obtained toxicology tests; and

19    (6) the hearing officer violated the CBA by failing to act impartially.

20       Of the six violations alleged by Bradford, only the first – Bradford's claim that Union

21    Pacific prevented Bradford's access to his litigation packet – arguably relates to the PLB's

22    exercise of its authority pursuant to the CBA.  The other examples presented by Bradford all

23    relate to the conduct of the MRO or the hearing officer – neither of which can be challenged

24    in this Court.[6]  *See English,* 18 F.3d at 743 (cases allowing judicial review of board awards

25

26    Pacific's Response to Bradford's Motion for Summary Judgment.

27       [6] In addition, Bradford's claim that the MRO failed to evaluate his prescription medication

28    information was never presented to the PLB; this Court cannot fault the PLB for failing to consider

on due process grounds restrict the review to the actions of the board); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk Southern Ry. Co.*, 312 F.3d 943, 947 (8th Cir. 2002) (district court can only review the decision of the PLB, not underlying investigation by carrier).

There is some merit to Bradford's claim that he was entitled to and did not receive his litigation packet. While it is in dispute whether Bradford actually requested the packet, assuming that he made such a request of the MRO and/or Union Pacific, they were legally obligated to provide the information. *See* 49 C.F.R. § 40.329 ("As an MRO or service agent you must provide, within 10 business days of receiving a written request from an employee, copies of any records pertaining to the employee's use of alcohol and/or drugs, including records of the employee's DOT-mandated drug and/or alcohol tests."); 49 C.F.R. § 40.11 ("As an employer, you are responsible for meeting all applicable requirements and procedures of this part."). It is undisputed that Bradford never received the packet. However, the CBA does not authorize the PLB (or this Court) to determine whether Union Pacific violated federal drug testing regulations.[7] The CBA required only that Bradford be provided with an opportunity to examine exhibits to be presented into evidence. Union Pacific never admitted the litigation packet into evidence, and therefore the PLB was correct, under the terms of the CBA, when it rejected Bradford's litigation packet claim on the ground that Union Pacific was not responsible for furnishing the litigation packet.

There is a larger due process problem at hand, however, because even though Union Pacific did not admit the litigation packet into evidence, it did admit into evidence the drug test results and the MRO's conclusion that the positive test was valid. The documents in the litigation packet allegedly form the underlying evidentiary support for the PLB's conclusions, and thus would have been useful to a defense expert witness who wanted to

an argument that was never presented to it.

[7] Pursuant to 29 U.S.C. § 20140 and 49 C.F.R. § 219.9(a), violations of federal drug testing regulations may result in the imposition of civil fines by the Federal Railroad Administration.

1   evaluate the scientific validity of Bradford's drug test.  The PLB considered this argument

2   but nonetheless concluded that Bradford's investigation hearing was fair and impartial.

3   Although Bradford was likely at a disadvantage in attempting to litigate against the test

4   results without any of the underlying test data, this Court would exceed the scope of its

5   judicial review if it rejected the PLB's finding that Bradford received a fair and impartial

6   hearing.  If the PLB concludes that an employee's investigation hearing was fair and

7   impartial, it is not enough for this Court to review the record and disagree with the PLB's

8   conclusion.  The PLB construed the "fair and impartial" requirement of the CBA and made

9   a decision that was within its authority.  Even if this Court is convinced that the PLB

10   committed serious legal error, it cannot overturn the PLB's decision.  *See M.L.B. Players*

11   *Ass'n*, 532 U.S. at 509.  Unless the PLB's decision rises to the level of its own "brand of

12   industrial justice," which the PLB's ruling on Bradford's litigation packet claim does not, the

13   decision must be enforced.  Accordingly, the Court concludes that the PLB's exercise of its

14   decision-making authority under the CBA was within its jurisdiction.

15            **C.   The timeliness of the PLB's decision**

16         Bradford also makes a jurisdiction-related argument when he contends that the PLB

17   failed to issue its decision within the time limit contemplated by the parties.  The

18   Memorandum of Agreement between Union Pacific and UTU states that the PLB shall make

19   findings and enter an award in writing within 60 days after the close of the hearing.  It is

20   undisputed that the PLB's decision was entered 37 days after this deadline.  To the extent

21   that the Memorandum of Agreement constitutes a "collective bargaining agreement," the

22   PLB did not exceed its jurisdiction in failing to meet this time limit.  Unless the agreement

23   itself makes the deadline jurisdictional, a party's failure to complain about delay before the

24   award is made forfeits his right to challenge the timeliness of the award.  *See Hill v. Norfolk*

25   *and Western Ry. Co.*, 814 F.2d 1192, 1199 (7th Cir. 1987).  Nothing in the language of the

26   Memorandum of Agreement states that the decision deadline is jurisdictional.  Bradford

27   never objected to the PLB's delay and he has not alleged any prejudice caused by the tardy

28

1   decision.  Accordingly, the short delay in issuing the PLB decision is not grounds to overturn
2   it.

3   **III.     The PLB did not violate Bradford's due process rights**

4          " '[D]ue process is flexible and calls for such procedural protections as the particular
5   situation demands.' " *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v.
6   *Brewer*, 408 U.S. 471, 481 (1972)).   "An essential principle of due process is that a
7   deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing
8   appropriate to the nature of the case.'" *Cleveland Board of Education v. Loudermill*, 470 U.S.
9   532, 542 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313
10  (1950)). It is undisputed that Bradford received proper notice of the investigation hearing and
11  the arbitration and an opportunity to be heard at both proceedings.  In addition, as stated in
12  Section I, the PLB considered all the arguments and evidence presented.  Although Bradford
13  claims generally that the PLB proceeding violated his due process rights, the bulk of his due
14  process arguments are aimed at the actions of the MRO and the hearing officer, not the PLB
15  itself.  Because a petitioner may only prevail on a Fifth Amendment due process claim by
16  showing that the PLB itself denied the petitioner due process during its proceeding, Bradford
17  has failed to establish that he is entitled to relief on these grounds.[8]  *See English*, 18 F.3d at
18  743; *Finley*, 312 F.3d at 947.

19         Bradford alleges that the PLB violated his due process rights because the arbitration
20  and the underlying investigation both proceeded without Bradford ever obtaining his
21  litigation packet from the MRO.  As stated in Section II.B. above, Bradford's defense was
22  perhaps diminished by his inability to rely on the litigation packet in support of his claim that
23  the test results were unreliable.  However, Bradford was able to challenge the reliability of
24  the test results in other ways – he submitted to the PLB negative drug tests of his hair
25  conducted after his removal from service and obtained the testimony of an expert witness,

26  _____

27         [8] The Court rejects Bradford's argument that cumulative errors by the hearing officer may deny
    an employee a fair hearing under the RLA, as it is unsupported by applicable case law.  (*See* Doc.
28  35, pg. 8, citing to a federal habeas case).

1  forensic toxicologist David Stoltman.  The PLB was aware of Bradford's due process claim
2  and nonetheless concluded that Bradford's investigation hearing was fair and impartial.  The
3  Court therefore concludes that Bradford's inability to access his litigation packet did not rise
4  to the level of constitutional error. *See, e.g., Edelman v. Western Airlines, Inc*., 892 F.2d 839,
5  847 (9th Cir. 1989) (due process deprivation may occur where employee is prevented from
6  presenting a defense, but no error where employee's emotional problems limited her ability
7  to present a defense).

8  **IV.    Bradford seeks judicial review on other grounds not recognized by federal law**

9         Bradford challenges the PLB's decisions on several other grounds, none of are within
10  the scope of this court's judicial review.  First, Bradford contends that this Court should
11  vacate the PLB's arbitration award on public policy grounds.  Although, in some limited
12  circumstances, courts may refuse to enforce arbitration awards on the ground that the award
13  violates public policy, s*ee United Paperworkers*, 484 U.S. at 42, those circumstances do not
14  exist in this case.  Bradford argues that the PLB's decision runs contrary to a general public
15  policy interest in protecting due process rights.  This is not the sort of "well defined and
16  dominant" public policy interest contemplated by *United Paperworkers*.  *See id.*  at 43
17  (rejecting public policy claim that merely invokes "general considerations of supposed public
18  interests.") To the contrary, RLA cases invoking the public policy exception typically rely
19  on the public policy "against the operation of dangerous machinery by persons under the
20  influence of drugs or alcohol," which is arguably advanced by the PLB's decision in this
21  case. *See Union Pacific R. Co. v. United Transp. Union*, 3 F.3d 255, 261 (8th Cir. 1993).  In
22  arguing that this Court should consider his challenges to the PLB award in the context of a
23  public policy interest in due process, Bradford is effectively asking this Court to substitute
24  "judicial for arbitral judgment," which it is not permitted to do. *Amalgamated Transit Union,*
25  *AFL-CIO Local Division 1309 v. Aztec Bus Lines*, 654 F.2d 642, 644 (1981).

26         Second, Bradford claims that Union Pacific erroneously pursued disciplinary
27  proceedings against Bradford pursuant to the CBA instead of its Drug and Alcohol
28  Prevention Program Discipline Panel ("PPDP").  This Court does not have authority to reject

1   a PLB decision on the ground that the carrier erred in its method of initiating disciplinary

2   proceedings; such an argument does not allege a violation of the RLA or that the PLB's

3   decision exceeded the jurisdiction granted in the CBA.  Moreover, there is nothing in the

4   Prevention Program Agreement (which contemplates formation of a PPDP to review charges

5   of violations of the drug and alcohol policy by employees on probationary status) which

6   mandates that its procedures supercede the procedures set forth in the CBA.  Finally, even

7   if PPDP did supercede the CBA, Bradford benefitted from Union Pacific's error: the CBA

8   disciplinary procedure actually affords more protections than the PPDP, as review by the

9   PPDP would have required UTU to bear the burden of proof.

10      Lastly, Bradford argues that this Court should overturn the PLB decision because

11   Union Pacific violated federal regulations in failing to produce the litigation packet.  For the

12   reasons stated in footnote 7, this argument is without merit.  Violations of the federal

13   regulations are subject to remedy by the Federal Railroad Administration.

14      Accordingly, the Court rejects these additional arguments by Bradford and affirms the

15   decision of the PLB.

16                          **Conclusion**

17   In light of the foregoing, **IT IS ORDERED THAT:**

18   1.   Bradford's Motion for Summary Judgment (Doc. 24) is denied;

19   2.   Union Pacific's Motion for Summary Judgment is (Doc. 26) is granted;

20   3.   The Clerk of the Court shall dismiss the complaint and action with prejudice and enter

21       judgment in favor of Union Pacific.

22      DATED this 1st day of June, 2012.

23

24

25                              Jennifer G. Zipps
                               United States District Judge
26

27

28